FILED

MAY 16 2014

CLERK

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
CENTRAL DIVISION

| | | |
|---|---|---|
| NORMA SORACE, Administratrix of the Estate of MELANIE SORACE, Deceased, JAHNEVA CANNADAY, Deceased, Guardian for DOMINIQUE HARRIS and TAMAYA SORACE, | * * * * * | CIV 13-3021-RAL |
| | * | |
| Plaintiff, | * * | OPINION AND ORDER GRANTING MOTION TO DISMISS |
| | * | |
| vs. | * * | |
| UNITED STATES OF AMERICA, | * * | |
| Defendant. | * | |

Plaintiff Norma Sorace (Sorace), the administratix of the estates of Melanie Sorace (Melanie) and Jahneva Cannaday and guardian for Dominique Harris and Tamaya Sorace, brought this suit against Defendant United States of America (Government) under the Federal Tort Claims Act (FTCA), 28 U.S.C. § 1346. Sorace alleges that the Rosebud Sioux Tribe Police Department was negligent in failing to stop a vehicle driven by an intoxicated driver, Shad Dillon (Dillon), before he collided with a vehicle driven by Melanie. Doc. 1. The Government moves to dismiss Sorace's Complaint under Federal Rule of Civil Procedure 12(b). Docs. 7, 8. Because Sorace has failed to state a claim upon which relief can be granted, this Court grants the Government's motion to dismiss.

I.     **Facts**

This case arises out of a horrible and tragic drunk-driving accident, killing two innocent people and injuring two other children. On June 30, 2011, in Mission, South Dakota, an intoxicated Dillon crashed his pickup truck into a vehicle occupied by Melanie and three children—Jahneva, Dominique, and Tamaya. Doc. 1 at ¶¶ 6, 7; Doc. 8-2 at 2. The impact killed

Melanie and Jahneva and injured Dominique and Tamaya. Doc. 1 at ¶ 7; Doc. 8-2 at 3. Dillon pleaded guilty to two counts of involuntary manslaughter and is serving a forty-month prison sentence. Doc. 8-1.

According to Sorace's Complaint, the Rosebud Sioux Tribe Police Department had received numerous calls on June 30, 2011, advising both that Dillon was drunk and driving and that a pickup truck was driving erratically through Mission, South Dakota. Doc. 1. Despite receiving these calls prior to the accident, Sorace's Complaint alleges, the Rosebud Sioux Tribe Police Department failed to take action to locate and arrest Dillon before the collision. Doc. 1 at ¶¶ 6-8.

## II.    Standards of Review

The Government moves to dismiss Sorace's Complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Rule 12(b)(1) provides for dismissal of a suit when the court lacks subject matter jurisdiction. The United States Court of Appeals for the Eighth Circuit has drawn a distinction between facial and factual 12(b)(1) motions, explaining the applicable standard in each instance. See Osborn v. United States, 918 F.2d 724, 728-30 (8th Cir. 1990). Under a facial attack, the "court restricts itself to the face of the pleadings, and the non-moving party receives the same protections as it would defending against a motion brought under Rule 12(b)(6)." Jones v. United States, 727 F.3d 844, 846 (8th Cir. 2013) (quoting Osborne, 918 F.2d at 729 n.6). Under a factual attack, however,

> the trial court may proceed as it never could under Rule 12(b)(6)
> or Fed. R. Civ. P. 56. Because at issue in a factual 12(b)(1)
> motion is the trial court's jurisdiction—its very power to hear the
> case—there is substantial authority that the trial court is free to
> weigh the evidence and satisfy itself as to the existence of its

2

> power to hear the case. In short, no presumptive truthfulness
> attaches to the plaintiff's allegations, and the existence of disputed
> material facts will not preclude the trial court from evaluating for
> itself the merits of jurisdictional claims.

Osborne, 918 F.2d at 730 (quoting Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891

(3rd Cir. 1977)). Plaintiffs faced with either a factual or facial attack under Rule 12(b)(1) have

the burden of proving subject matter jurisdiction. V.S. Ltd. P'ship v. Dep't of Hous. & Urban

Dev., 235 F.3d 1109, 1112 (8th Cir. 2000). Here, the Government makes a factual attack, asking

this Court to resolve whether the Rosebud Sioux Tribe Police Department received any

communications regarding Dillon driving erratically prior to the car accident. Although neither

party has requested an evidentiary hearing on this issue, see Osborn, 918 F.2d at 730 (explaining

that a district court considering factual attack under 12(b)(1) may hold an evidentiary hearing

"[i]f necessary"), both have submitted affidavits supporting their position. Even though a court

generally should consider a jurisdictional attack under Rule 12(b)(1) first, see Ramming v.

United States, 281 F.3d 158, 161 (5th Cir. 2001) (per curiam), here the issues converge in a way

where deciding the motion to dismiss under Rule 12(b)(6) makes greater sense.

Rule 12(b)(6) permits a pre-answer motion to dismiss for "failure to state a claim upon

which relief can be granted[.]"  Although a complaint need not contain detailed factual

allegations to survive a motion to dismiss under Rule 12(b)(6), it must contain "enough facts to

state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544,

570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows

the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "[A] well-pleaded complaint may

3

proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that

a recovery is very remote and unlikely.'" Twombly, 550 U.S. at 556 (quoting Scheuer v. Rhodes,

416 U.S. 232, 236 (1974)).  On a motion to dismiss under Rule 12(b)(6), courts must accept the

plaintiff's factual allegations as true and construe all inferences in the plaintiff's favor, but need

not accept a plaintiff's legal conclusions.  Retro Television Network, Inc. v. Luken Commc'ns,

LLC, 696 F.3d 766, 768-69 (8th Cir. 2012).  Finally, in determining whether to grant a Rule

12(b)(6) motion, a court "generally must ignore materials outside the pleadings, but it may

consider some materials that are part of the public record or do not contradict the complaint, as

well as materials that are necessarily embraced by the pleadings." Smithrud v. City of St. Paul,

746 F.3d 391, 395 (8th Cir. 2014) (quoting Porus Media Corp. v. Pall Corp., 186 F.3d 1077,

1079 (8th Cir. 1999)).  As the moving party under Rule 12(b)(6), the Government bears the

burden of proving that no claim exists.  See 5B Charles Alan Wright et al., Federal Practice and

Procedure § 1357 (3d ed. 2004) ("All federal courts are in agreement that the burden is on the

moving party to prove that no legally cognizable claim for relief exists.").

## III.   Discussion

### A.   FTCA and Private Analogue

Absent a waiver, sovereign immunity protects the United States and its agencies from

suit. FDIC v. Meyer, 510 U.S. 471, 475 (1994). The FTCA, under which Sorace brings her

claims, waives the sovereign immunity of the United States for certain torts committed by

government employees acting within the scope of their employment. Sorace alleges in her

Complaint that the Rosebud Sioux Tribe Police Department was performing law enforcement

services on the Rosebud Indian Reservation pursuant to a self-determination contract and that

4

the Rosebud Sioux Tribe Police Department was negligent in performing these services. Doc. 1 at ¶¶ 4, 5. As such, the FTCA is the appropriate vehicle for Sorace's claims. See Hinsley v. Standing Rock Child Protective Servs., 516 F.3d 668, 672 (8th Cir. 2008) ("Tort claims against tribes, tribal organizations, or their employees, that arise out of the tribe or tribal organization carrying out a self-determination contract, are considered claims against the United States and are covered to the full extent of the FTCA.").

The FTCA's waiver of sovereign immunity is limited to "circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1); see also 28 U.S.C. § 2674 ("The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances . . . ."); Eubank v. Kansas City Power & Light Co., 626 F.3d 424, 427 (8th Cir. 2010) ("If a private person, under like circumstances, would be liable under the substantive law of the State where the act or omission occurred, then the FTCA waives sovereign immunity."). The term "law of the place" in section 1346(b)(1) "refers to the substantive law of the state where the wrongful conduct took place." Washington v. Drug Enforcement Admin., 183 F.3d 868, 873 (8th Cir. 1999). Because Sorace's claims arise out of conduct that occurred on an Indian reservation located within South Dakota, the substantive law of South Dakota governs this action. LaFromboise v. Leavitt, 439 F.3d 792, 796 (8th Cir. 2006). To state a claim for relief that is cognizable under the FTCA, Sorace's claim against the Government must have a "private analogue." Green Acres Enters., Inc. v. United States, 418 F.3d 852, 856 (8th Cir. 2005). That

is, Sorace's claim must be such that the Government, if a private person under similar circumstances, "would be liable for the same conduct in [South Dakota]." Id.

When, as here, the alleged negligent act involves conduct peculiar to law enforcement, identifying the appropriate private analogue in state law can be difficult. The Government contends that the facts alleged in Sorace's Complaint do not give rise to a duty regardless of whether this Court applies South Dakota's "public-duty rule," which governs the liability of police officers, or South Dakota law concerning a private citizen's liability for failing to prevent the misconduct of a third party. Several courts of appeals have applied a state's public-duty rule when considering claims under the FTCA. See Stratmeyer v. United States, 67 F.3d 1340, 1347-48 (7th Cir. 1995) (applying Indiana's public-duty rule in FTCA action alleging failure to quarantine cattle properly); Crider v. United States, 885 F.2d 294, 296-98 (5th Cir. 1989) (applying Texas's public-duty rule in FTCA action asserting claim that federal park rangers had a duty to detain drunk driver who later injured plaintiff in car accident); Gelley v. Astra Pharm. Prods. Inc., 610 F.2d 558, 561-62 (8th Cir. 1979) (applying Minnesota's public-duty rule in wrongful death action under FTCA). Since the Supreme Court's decision in United States v. Olson, 546 U.S. 43 (2005), however, at least one district court has found that the public-duty rule is inapplicable in FTCA actions. Lumsden v. United States, 555 F. Supp. 2d 580, 595 (E.D.N.C. 2008); see also McCloskey v. Mueller, 446 F.3d 262, 267 (1st Cir. 2006) (explaining that courts applying the FTCA "are not at liberty to derive analogues from instances in which state law enforcement officers—and only state law enforcement officers—would be liable under state law"); but see Fernandez v. United States, No. 10cv1387 AJB (PCL), 2012 WL 202775, at *4-5 (S.D. Cal. Jan. 23, 2012) (applying California's public-duty rule in FTCA case).

6

In Olson, the Supreme Court reaffirmed that the Government's waiver of sovereign immunity under the FTCA depends upon the state-law liability of a private person, not of a state or municipality. 546 U.S. at 45-46. Specifically, the Court vacated a decision from the United States Court of Appeals for the Ninth Circuit holding that when a plaintiff brings a claim based upon a "unique government function" the Government waives its sovereign immunity under the FTCA if a state or municipality would be liable under the law of the state where the act or omission occurred. Id. The Court explained that lower courts must "look to the state-law liability of private entities, not to that of public entities, when assessing the Government's liability under the FTCA 'in the performance of activities which private persons do not perform.'" Id. at 46 (quoting Indian Towing Co. v. United States, 350 U.S. 61, 64 (1955)). Relying on Olson, the district court in Lumsden held that whether a law enforcement officer would be liable under the state's public-duty rule was irrelevant under the FTCA. 555 F. Supp. 2d at 595.

There is some justification for applying South Dakota's public-duty rule in this case. First, South Dakota's public-duty rule is not grounded in government immunity. As the Supreme Court of South Dakota has explained:

> [t]hough some consider [the public-duty rule] a form of immunity, we view the rule principally within the framework of duty—if none exists, then no liability may affix. When our Legislature waived immunity for public entities, it created no new causes of action, but only imposed upon those entities basically the same liability in tort individuals bear.

Tipton v. Town of Tabor (Tipton II), 567 N.W.2d 351, 357 (S.D. 1997). Second, the Supreme Court of South Dakota has noted that the State's public-duty rule is consistent with the common-law rule applying to private citizens that one generally owes no duty to prevent the misconduct

of third parties. Id.; see also Walther v. KPKA Meadowlands Ltd. P'ship, 581 N.W.2d 527, 531 (S.D. 1998) ("Generally, the law imposes no duty to prevent the misconduct of a third person. Thus, police officers are generally protected from liability through what is termed the public-duty rule.") (internal citations omitted).  The Eighth Circuit found similar factors crucial in deciding to employ Minnesota's public-duty rule in Gelley, 610 F.2d at 561-62.  Out of an abundance of caution, however, this Court will analyze Sorace's claim under the public-duty rule and South Dakota law concerning a private citizen's liability for failing to prevent the misconduct of a third party.

### B.    Public-Duty Rule

The Government contends that under South Dakota's public-duty rule the Rosebud Sioux Tribe Police Department owed no duty to Melanie or the children to locate and arrest Dillon. Sorace disagrees, arguing that certain statutes and regulations imposed a duty upon the Rosebud Sioux Tribe Police Department to arrest Dillon prior to the accident. To recover on a negligence claim in South Dakota, a plaintiff must establish, among other things, that the defendant owed her a duty and breached that duty. Hewitt v. Felderman, 841 N.W.2d 258, 263 (S.D. 2013) (quoting Highmark Fed. Credit Union v. Hunter, 814 N.W.2d 413, 415 (S.D. 2012)). The existence of a duty is a question of law for the courts. Gunville v. United States, No. CIV 11-3022-RAL, 2013 WL 6284523, at *7-8 (D.S.D. Dec. 4, 2013) (applying South Dakota law).

South Dakota's public-duty rule provides that the police owe a duty of protection to the public at large. Walther, 581 N.W.2d at 531; Tipton II, 567 N.W.2d at 356. This general duty of protection is insufficient to establish that the police owe a duty to a particular plaintiff. Thus, to establish liability under the public-duty rule in South Dakota, a plaintiff must demonstrate that

8

the police owed her a "special duty." Tipton v. Town of Tabor (Tipton I), 538 N.W.2d 783, 785 (S.D. 1995) ("Under our case law, a government entity is liable for failure to enforce its laws only when it assumes a special, rather than a public, duty."). That is, the plaintiff must demonstrate "some duty owed to her as an individual or as a member of a class, rather than to the public as a whole." Pray v. City of Flandreau, 801 N.W.2d 451, 454 (S.D. 2011); see also Gleason v. Peters, 568 N.W.2d 482, 485 (S.D. 1997) ("The special duty rule provides that a plaintiff must show a breach of a duty owed to him/her as an individual rather than to the community at large in order to establish liability."). The Supreme Court of South Dakota has adopted the following four-part test to determine the existence of a special duty:

> 1. [T]he state's actual knowledge of the dangerous condition;
> 2. reasonable reliance by persons on the state's representations and conduct;
> 3. an ordinance or statute that sets forth mandatory acts clearly for the protection of a particular class of persons rather than the public as a whole; and
> 4. failure by the state to use due care to avoid increasing the risk of harm.

Walther, 581 N.W.2d at 532 (quoting Tipton I, 538 N.W.2d at 787). "Strong evidence concerning any combination of these factors may be sufficient to impose liability on a government entity." Tipton I, 538 N.W.2d at 787.

### 1.    Actual Knowledge

The Supreme Court of South Dakota has defined "actual knowledge" as "knowledge of a violation of law constituting a dangerous condition." Tipton II, 567 N.W.2d at 358 (citation and internal quotation marks omitted). "Constructive knowledge is insufficient: a public entity must be uniquely aware of the particular danger or risk to which a plaintiff is exposed. It means

9

knowing inaction could lead to harm." Id. (internal citation omitted).  "[A]ctual knowledge denotes a foreseeable plaintiff with a foreseeable injury." Id. at 359.

The parties dispute whether the Rosebud Sioux Tribe Police Department received complaints about a pickup truck driving erratically prior to the accident.  In support of its motion to dismiss, the Government submitted a dispatch log from June 30, 2011, and an affidavit from the Rosebud Sioux Tribe Chief of Police stating that the police department did not receive any communications regarding Dillon or the pickup truck he was driving prior to the accident.  Doc. 9.  The affidavit stated further that no patrol officer on duty on June 30, 2011, observed Dillon driving his pickup truck or had knowledge that he was driving dangerously, and that no employee of the Rosebud Sioux Tribe Police Department made any representation that officers would respond to a report that Dillon or a pickup truck was driving erratically.  Doc. 9.  Sorace responded by submitting an affidavit from Elizabeth Roubideaux Bordeaux, Dillon's ex-girlfriend, stating that she called the Rosebud Sioux Tribe Police Department apparently on June 30, 2011, several times to report that Dillon was intoxicated and driving dangerously and that the Police Department told her that they would take action.  Doc. 14-2.  Sorace also submitted an affidavit from Luke Black Bear, a police officer with the Rosebud Sioux Tribe Police Department, stating that "[p]rior to the collision, the Rosebud Police Department had received phone calls reporting Shad Dillon's reckless driving near the Ampride Station and Buche's Parking Lot."  Doc. 14-3.  Black Bear stated further that his "brother also reported reckless driving to the Police Department prior to the collision."  Doc. 14-3.  The Government then submitted additional affidavits challenging the accuracy and reliability of the statements from Bordeaux and Black Bear.  Docs. 16, 17.

10

On a motion to dismiss under Rule 12(b)(6), this Court is in no position to delve into the competing affidavits and determine whether the Rosebud Sioux Tribe Police Department did, in fact, receive reports of a pickup truck being driven erratically prior to the accident. Rather, this Court must take the facts alleged in Sorace's Complaint as true and draw all reasonable inferences in her favor. Hager v. Ark. Dep't of Health, 735 F.3d 1009, 1013 (8th Cir. 2013). Accepting as true the allegation in Sorace's Complaint that shortly before the accident, the Rosebud Sioux Tribe Police Department received numerous reports that a pickup truck was driving erratically through Mission, South Dakota, Sorace has established that the Rosebud Sioux Tribe Police Department had actual knowledge of Dillon's dangerous driving. This finding is consistent with the Pray decision, where the Supreme Court of South Dakota found that a city had actual knowledge of a dog's dangerousness when the city had received reports about the dog from postal workers and had previously declared that the dog was vicious after it bit a city employee. 801 N.W.2d at 455. However, the Rosebud Sioux Tribe Police Department having knowledge of Dillon's dangerous driving does not, by itself, establish that the Police Department owed Melanie or the children a special duty. See id. ("[E]vidence of actual knowledge alone is insufficient to establish that a city undertook a special or private duty."). Rather, Sorace must couple the actual knowledge factor with at least one of the other factors to establish a special duty. Id.

### 2.    Reasonable Reliance

Sorace argues that "when reports are made to the police, one can rely from taking of the report that law enforcement will take action to protect from the danger reported." Doc. 14 at 10. To show reasonable reliance, however, Sorace must show that Melanie or the children "depended

11

on specific actions or representations which [caused them] to forgo other alternatives of protecting themselves." Tipton II, 567 N.W.2d at 364-65 (citation and internal quotation marks omitted).  The Supreme Court of South Dakota has refused to find reasonable reliance absent "personal assurances" to the plaintiff.  Id. at 365 (declining to find reasonable reliance where defendant made no direct promises to plaintiffs to protect them from dangerous dogs); see also Walther, 581 N.W.2d at 533 (finding no reasonable reliance where police told plaintiff that her former boyfriend had been arrested but made no assurance concerning how long he would be kept in jail).

Sorace's Complaint fails to allege sufficient facts to suggest that there was reasonable reliance by Melanie or the children.  The Complaint contains no allegations that Melanie or the children called the police, that they knew third parties had called the police complaining about Dillon's erratic driving, or that they forwent other avenues of protection on June 30, 2011, because the Rosebud Sioux Tribe Police Department assured them safety from Dillon.  Even assuming that the Rosebud Sioux Tribe Police Department told third parties it would investigate Dillon's driving, there are no allegations that Melanie or the children were aware of this statement.  Thus, such a statement would not be a promise upon which Melanie or the children could rely. See Fried v. Archer, 775 A.2d 430, 453 (Md. Ct. Spec. App. 2001) (collecting cases and concluding that "[m]any [courts] have held that emergency calls by third parties do not satisfy their state's special duty test, because the victim must have been aware of the promise to send assistance").  Although Melanie and the children may have had a general belief that the police would keep the roads safe, this is insufficient to establish reasonable reliance. Tipton II, 567 N.W.2d at 365 ("Trusting upon some feeling they would be safe wherever they went in

12

Tabor is perhaps comprehensible; however, it does not rise to the level of reliance causing [the plaintiffs] to forgo self-precaution.").

### 3.    Ordinance or Statute

To support her argument that the Rosebud Sioux Tribe Police Department owed Melanie and the children a duty, Sorace cites sections from the Code of Federal Regulations, the Bureau of Indian Affairs (BIA) Manual, the BIA Law Enforcement Handbook, Rosebud Sioux Tribal Code sections 6-1-1, 6-2-1, 6-3-1, a Rosebud Sioux Tribe Rule of Criminal Procedure, and South Dakota Codified Laws (SDCL) sections 23A-3-2, 32-23-1, 32-23-1.1, and 32-23-1.3.[1] Of course, "[f]ederally imposed obligations, whether general or specific, are irrelevant to our inquiry under the FTCA, unless state law imposes a similar obligation upon private persons." Klett v. Pim, 965 F.2d 587, 589 (8th Cir. 1992) (quoting Gelley, 610 F.2d at 562). Similarly, the violation of an internal policy contained in a BIA handbook or manual does not create an independent cause of action under the FTCA "unless the challenged conduct is independently tortious under applicable state law." Dalrymple v. United States, 460 F.3d 1318, 1327 (11th Cir. 2006). As to Sorace's reliance on the Rosebud Sioux Tribal Code, the Eighth Circuit has determined that when an FTCA action arises on an American Indian reservation, courts must apply the substantive law of the state in which the reservation is located. See LaFromboise, 439 F.3d at 796 ("[W]here an act or omission occurs within the territorial boundaries of both a tribal reservation and a State, 'the law of the place' for purposes of the FTCA is the law of the State."). This Court has

---

[1]Sorace also cites SDCL section 23A-3-2.1, a statute concerning the arrest of domestic abuse suspects that is irrelevant to this case.

examined the regulations and statutes Sorace cites and concludes that South Dakota law would not permit recovery for a negligent failure to enforce these regulations and statutes.

The third factor of South Dakota's special-duty test "permits recovery against a government entity for negligent failure to enforce its laws only when there is language in a statute or ordinance which shows an intent to protect a particular and circumscribed class of persons." Tipton II, 567 N.W.2d at 365-66 (quoting Tipton I, 538 N.W.2d at 786) (internal quotation marks omitted). The Supreme Court of South Dakota has declined to find an "intent to protect a particular and circumscribed class of persons" where a statute or ordinance did not delineate any special group of people, Id. at 366 (finding the "generality" of the enactments in question determinative), or merely stated in broad terms that police officers shall enforce the law, Gleason, 568 N.W.2d at 486-87 ("The clear language of this statute provides that officers are to enforce the law. This certainly means to enforce the law in order to protect the general public and not a particular class of individuals.").

Here, the statutes and regulations Sorace cites suffer from the same shortcomings as the statutes and ordinances in Tipton II and Gleason. The sections of the Rosebud Sioux Tribal Code Sorace relies on merely proscribe driving under the influence of drugs or alcohol, reckless driving, and exhibition driving. Similarly, SDCL section 32-23-1 proscribes driving under the influence of drugs or alcohol and SDCL section 32-23-1.3 states that a person arrested for driving or being in actual physical control of a vehicle while the person's blood alcohol content is .08 percent or greater shall be charged with a violation of SDCL section 32-23-1. These Rosebud Sioux Tribal and South Dakota statutes neither delineate a specific class of people they are meant to protect nor create a mandatory obligation for the Rosebud Sioux Tribe Police

14

Department to arrest drunk drivers.  The same is true of SDCL sections 32-23-1.1, 23A-3-2, and

the Rosebud Rule of Criminal Procedure cited by Sorace.  These laws do not specify a class of

people protected and state only that police officers *may* arrest a person without a warrant if they

have probable cause to do so.  As the Supreme Court of South Dakota explained in Tipton II,

simply because certain laws give a government entity the authority to act "does not mean that a

special class is created and needs to be protected."  567 N.W.2d at 366.  Although Sorace argues

that "[d]uties regarding inebriated persons can be mandatory[,]" Doc. 14 at 8, the cases she relies

on to support this proposition are not from South Dakota and are easily distinguishable.  See

Busby v. Municipality of Anchorage, 741 P.2d 230, 232-34 (Alaska 1987) (rejecting public-duty

doctrine and finding that Alaska statute that stated that police officers *shall* take people

incapacitated by alcohol into custody imposed mandatory duty upon officer to do so); Bailey v.

Town of Forks, 737 P.2d 1257, 1260-61 (Wash. 1987) (applying broad version of public-duty

rule specifically rejected by the Supreme Court of South Dakota in Tipton II to find that police

officer owed special duty of care to injured motorcyclist under state statutes concerning drunk

driving and intoxicated persons); Weldy v. Town of Kingston, 514 A.2d 1257, 1260 (N.H. 1986)

(finding that statute stating that officers *shall* arrest any person illegally transporting alcohol was

mandatory).  Further, "the clear majority of courts" have concluded that "statutes pertaining to

drunk driving and public intoxication, do not, in conjunction with statutes authorizing

warrantless arrests, give rise to a 'special-duty' of care where a plaintiff alleges that a police

officer failed to arrest or detain an alleged drunk driver." Ezell v. Cockrell, 902 S.W.2d 394, 403

(Tenn. 1995) (collecting cases);  2 J.D. Lee & B. Lindahl, Modern Tort Law: Liability and

Litigation § 16:26 (2d ed. 2003) ("The weight of authority is that neither a law enforcement

15

officer nor a governmental entity is liable to an individual injured by a drunk driver whom the officer or government entity failed to restrain or arrest.").

Sorace's citation to sections from the BIA Manual and the BIA Law Enforcement Handbook produces no different result. By its terms, the third factor of South Dakota's special-duty test concerns whether a "ordinance or statute" was established to protect a particular class of people. Tipton II, 567 N.W.2d at 355. Sorace has not identified any South Dakota case holding that regulations or procedures in police handbooks may give rise to a special duty under the public-duty rule. At least two courts outside of South Dakota have found that a government entity's procedures do not create a special duty. See McGaughey v. District of Columbia, 734 F. Supp. 2d 14, 19 (D.D.C. 2010) ("[B]ecause [a]gency protocols and procedures, like agency manuals, do not have the force or effect of a statute or an administrative regulation, they are insufficient to give rise to a special relationship." (citation and internal quotation marks omitted)); Coty v. Washoe Cnty., 839 P.2d 97, 99 n.6 (Nev. 1992) ("[I]nternal procedures do not approach the level of statutes or ordinances, which must set forth mandatory acts clearly for the protection of a particular class of persons rather than the public as a whole in order to create a special duty." (citation and internal quotation marks omitted)).

Rather, Sorace points to Florence v. Goldberg, 375 N.E.2d 763 (N.Y. 1978), and asserts that "[m]andatory police department regulations have been held to impose a duty to those who could foreseeably be injured by failure to comply." Doc. 14 at 8. In Florence, the Court of Appeals of New York found that a police department had assumed a special duty to a child struck by a car while negotiating a school crossing when the police department had adopted regulations governing school-crossing supervision and the child's mother had relied on the police

16

department's assumption of this duty. 375 N.E.2d at 767. "Significantly," the court explained, "the duty assumed by the police department was a limited one: a duty intended to benefit a special class of persons—viz., children crossing designated intersections while traveling to and from school at scheduled times." Id. Even assuming that the Supreme Court of South Dakota would find procedures in a police handbook sufficient to give rise to a special duty, the sections from the BIA Manual and the BIA Law Enforcement Handbook Sorace cites lack the specificity necessary to establish that they were written with the intent to protect a particular and circumscribed class of people. See Doc. 14-1 at 4-8, 11-12, 20, 33-37. If anything, these sections, which concern the enforcement of traffic laws and the criteria used to evaluate police officer performance, were designed to protect the general public from traffic accidents. Melanie and the children fall within the general public and not a specific class to which the Rosebud Sioux Tribe Police Department owed a special duty. See Tipton II, 567 N.W.2d at 366.

### 4.      Failure to Avoid Increasing Risk of Harm

"Under this factor, official action must either cause harm itself or expose plaintiffs to new or greater risks, leaving them in a worse position than they were before official action." Id. Sorace's Complaint is devoid of allegations that the Rosebud Sioux Tribe Police Department took affirmative action that "contributed to, increased, or changed the risk" that otherwise existed. Gleason, 568 N.W.2d at 487 (quoting Tipton II, 567 N.W.2d at 367). Instead, Sorace alleges in her Complaint that the Rosebud Sioux Tribe Police Department failed to remove the threat Dillon posed after receiving complaints that he was driving erratically. Such an allegation is insufficient to establish the fourth factor of the special-duty test. See Pray, 801 N.W.2d at 456 ("A failure to diminish potential harm is not enough."). At bottom, Sorace has failed to allege

17

sufficient facts to indicate that the Rosebud Sioux Tribe Police Department owed Melanie or the children a special duty.

### C.    Private Person Liability in South Dakota

Although there is generally no duty to prevent the misconduct of third parties, a plaintiff may establish that such a duty exists by showing 1) that there is a special relationship between the parties and 2) the third party's injurious act was foreseeable.  Kirlin v. Halverson, 758 N.W.2d 436, 448-49 (S.D. 2008).  A plaintiff may satisfy the special relationship prong by demonstrating either a "special relation . . . between the [defendant] and the third person which imposes a duty upon the [defendant] to control the third person's conduct," or a "special relation . . . between the [defendant] and the [plaintiff] which gives to the [plaintiff] a right to protection." Id. at 449 (quoting Restatement (Second) of Torts § 315 (1965)).

The Supreme Court of South Dakota has recognized that a special relationship may exist between a defendant and a third party when the third party is the defendant's employee, id., or when the defendant has taken charge of the third party, E.P. v. Riley, 604 N.W.2d 7, 14-15 (S.D. 1999).  Dillon was not an employee of the Rosebud Sioux Tribe Police Department, and Sorace has not alleged any facts in her Complaint indicating that the Rosebud Sioux Tribe Police Department took charge of Dillon.  Indeed, Sorace's suit is premised on the Rosebud Sioux Tribe Police Department's failure to take Dillon into custody.  With respect to a special relationship between the defendant and the plaintiff, the Supreme Court of South Dakota, following sections 314A and 320 of the Restatement (Second) of Torts, has acknowledged that such a relationship may exist between a common carrier and its passengers, an innkeeper and her guests, a landowner and her invitees, and one who is required by law or who voluntarily takes the custody

18

of another under circumstances which deprive the other of her normal opportunities for

protection. See Kirlin, 758 N.W.2d at 450 n.11 (citing Restatement (Second) of Torts §§ 314A

and 320 (1965)). Sorace's Complaint does not allege any facts suggesting that the situations

identified in sections 314A and 320 of the Restatement (Second) of Torts apply here. Although

the Supreme Court of South Dakota's list of special relationships that may give rise to a duty to

prevent a third party's misconduct is not exhaustive, Sorace has proffered no viable theory under

which the Rosebud Sioux Tribe Police Department, if a private person in South Dakota, would

have a duty to control Dillon's behavior.[2]  Because Sorace has failed to allege sufficient facts

suggesting a special relationship between the parties, it is unnecessary to consider whether

Dillon's injurious acts were foreseeable.

## IV.   Conclusion

This case arises out of a horrible tragedy and criminal conduct that ought not to have

occurred. The loss suffered by the Sorace family is heart wrenching. However, this Court must

follow the law and authorities detailed in this opinion and order. For the reasons stated above,

it is hereby

ORDERED that the Government's motion to dismiss for failure to state a claim, Doc. 7,

is granted.

---

[2] Sorace also cites Indian Towing Co., 350 U.S. 61, and argues that once the Government "undertakes an activity, it is obligated to use due care to make certain the undertaking is properly carried out." Doc. 14 at 9. Indian Towing Co. concerned application of the Good Samaritan doctrine in an FTCA case. 350 U.S. at 64-65. South Dakota recognizes the Good Samaritan doctrine and has adopted sections 323 and 324A of the Restatement (Second) of Torts. Andrushchenko v. Silchuk, 744 N.W.2d 850, 858 (S.D. 2008); Schoenwald v. Farmers Coop. Ass'n of Marion, 474 N.W.2d 519, 521 (S.D. 1991). Because Sorace fails to allege facts in her Complaint suggesting that she falls within sections 323 or 324A, her argument that the Rosebud Sioux Tribe Police Department owed her a duty under the Good Samaritan doctrine fails.

19

Dated May **16**th, 2014.

BY THE COURT:

_____

ROBERTO A. LANGE
UNITED STATES DISTRICT JUDGE